UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOMINICK GADSON,

    Petitioner,

v.                                  Case No. 8:07-cv-1119-T-17MAP

SECRETARY DEPARTMENT OF CORRECTIONS,

    Respondent.
_____/

## **O R D E R**

Before this Court is a pro se 28 U.S.C. § 2254 petition for writ of habeas corpus filed by a Florida prisoner challenging his conviction for robbery with a firearm arising out of the Thirteenth Judicial Circuit, Hillsborough County, Florida. A review of the record demonstrates that, for the following reasons, the petition must be denied.

### Background

Gadson was found guilty after a jury trial of robbery with a firearm. On August 19, 2003, he was adjudicated guilty in accordance with the verdict and sentenced as a prison releasee reoffender to life in prison. Gadson appealed his trial-based judgment. Following his appellate counsel's Anders brief concluding there was no meritorious basis for a claim of significant reversible error (Resp. Ex. 2), Gadson did not avail himself of the opportunity to file a pro se brief. On June 23, 2004, the state district court per curiam affirmed without written decision in case no. 2D03-4214. *Gadson v. State*, 880 So. 2d 1222 (Fla. 2nd DCA

2004)[table]. Gadson did not seek rehearing; nor did he pursue certiorari review in the United States Supreme Court.

Gadson filed a pro se petition dated August 6, 2004, alleging his appellate counsel rendered ineffective assistance. (Resp. Ex. 6). On August 26, 2004, the state district court denied the petition without elaboration. *Gadson v. State*, case no. 2D04-3478 (Fla. 2d DCA Aug. 26, 2004)[no table found]. Rehearing was denied September 21, 2004.

Gadson filed a pro se Rule 3.850 motion for postconviction relief dated January 14, 2005. (Resp. Ex. 12). By order rendered April 12, 2006, the postconviction court denied the rule 3.850 motion without a hearing. (Resp. Ex. 13) Gadson appealed the summary denial, and on October 4, 2006, the state district court per curiam affirmed without written decision in case no. 2D06-4676. *Gadson v. State*, 939 So. 2d 1068 (Fla. 2nd DCA 2006)[table]. The mandate issued October 25, 2006.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involve an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it

must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

## Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

## Discussion

## Ground One

Gadson alleges his appellate counsel rendered ineffective assistance in his direct appeal. He faults his counsel for not proving a "brief statement" in the *Anders* brief as to each ground identified in the statement of judicial acts to be reviewed filed by his trial counsel.

Ineffective assistance of counsel is a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). The two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668, 690 (1984), applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285-86 (2000).

To establish ineffective assistance of counsel, a defendant must show that counsel's performance was deficient, and counsel's performance prejudiced the defense. *Strickland*, 466 U.S. at 687. The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one. *See Osborne v. Terry*, 466 F.3d 1298, 1305 (11th Cir. 2006)(citing *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc). In order to establish deficient performance, the petitioner must show that, in light of all the circumstances, counsel's performance was outside the wide range of professional competence. The court's review of counsel's performance should focus on "not what is possible or what is prudent or appropriate, but only [on] what is constitutionally compelled." *Chandler*, 218 F.3d at 1313 (quoting *Burger v. Kemp*, 483 U.S. 776 (1987)). There are no absolute rules dictating what is reasonable performance because absolute rules would restrict the wide latitude counsel have in making tactical decisions. *See Chandler* at 1317.

The test for ineffectiveness is not whether counsel could have done more; perfection is not required. Nor is the test whether the best criminal defense attorneys might have done more. *Chandler* at 1313. Instead the test is ... whether what they did was within the 'wide range of reasonable professional assistance.' *Id.* at n.12 (citing *Waters*, 46 F.3d at 1518 (en banc) (citations omitted).

The court's review of counsel's performance must be highly deferential, and the court must avoid second-guessing counsel's performance. *See Strickland*, 466 U.S. at 689. For

a petitioner to show deficient performance, he "must establish that no competent counsel would have taken the action that his counsel did take."[1] *Chandler* at 1316.

To demonstrate prejudice, Gadson must establish it was reasonably probable that, but for counsel's error, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. at 286. He must satisfy both prongs of the *Strickland* test in order to prevail on his claim of ineffective assistance of appellate counsel. Id., 528 U.S. at 289.[2]

Gadson cites Florida law for his contention counsel did not follow the procedures outlined in *Anders* because such did not contain a brief statement as to each of the judicial acts for review submitted by his trial counsel. In Gadson's state habeas petition, he did not assail Florida's *Anders* procedure; rather he suggested counsel's *Anders* brief did not comport with *Anders* because the brief did meet Florida's procedures. To the extent Gadson relies on his underlying claim of state law error, deference is due the state decision on the underlying state law claim.

Although whether trial counsel was constitutionally ineffective is a question of federal law, when the answer to the question turns on whether counsel should have raised issues

---

[1] To uphold a lawyer's strategy, the Court need not attempt to divine the lawyer's mental processes underlying the strategy. "There are countless ways to provide effective assistance in any given case." *Strickland,* 104 S. Ct. at 2065. No lawyer can be expected to have considered all of the ways. *Chandler* at 1316.

[2] When evaluating claims of ineffective assistance of appellate counsel, the Florida courts apply the appropriate standard parallel to that enunciated in *Strickland.* The petitioner must show (1) specific errors or omissions which show that appellate counsel's performance deviated from the norm or fell outside the range of professionally acceptable performance and (2) the deficiency of that performance compromised the appellate process to such a degree as to undermine confidence in the fairness and correctness of the appellate result. *Smith v. State*, 931 So. 2d 790, 805 (Fla. 2006)(citing *Wilson v. Wainwright*, 474 So. 2d 1162, 1163 (Fla. 1985). Counsel cannot ordinarily be considered ineffective for failing to raise issues that are procedurally barred because such were not properly raised during the trial court proceedings. *See Rutherford v. Moore*, 774 So. 2d 637, 643 (Fla. 2000). Moreover, appellate counsel cannot be deemed ineffective for failing to raise nonmeritorious claims on appeal. *See id.*

of state law, § 2254(d) requires the federal court defer to the state court's decision regarding its own laws. *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984) (superceded by statute on other grounds). Federal courts must abide by the state courts' rulings on matters of state law. *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (citations and footnote omitted). It is a fundamental principle state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters. *See Herring v. Secretary, Dept. of Corrections*, 397 F.3d 1338, 1354-55 (11th Cir. 2005)(citing *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997) (citations omitted).

In Gadson's case, the silent habeas denial resolves a question of state law, namely, whether the *Anders* brief comported with state procedures. Given the state habeas court did not grant his petition based on his state law arguments, Gadson is unable to show his counsel was ineffective for not following state procedures in filing his *Anders* brief on Gadson's behalf.

Moreover, to the extent Gadson suggests the procedure outlined in *Anders* is mandatory on the states, and in turn, for his appellate counsel, he is wrong. *See Smith v. Robbins*, 528 U.S. 259 (2000) (holding the *Anders* procedure is merely one method of satisfying the requirements of the Constitution for indigent criminal appeals). The Supreme Court explained states may craft variations of the Anders procedure "so long as it reasonably ensures that an indigent's appeal will be resolved in a way that is related to the merit of that appeal." *Id.*, 528 U.S. at 276-77.[3]

---

[3] In *Robbins*, the Supreme Court concluded California's *People v. Wende*, 25 Cal. 3d 436, 600 P.2d 1071 (Cal. 1979), procedure, which diverged from the *Anders* procedure, met this standard. *See id.* at 279. In reaching this determination, the Court noted four ways in which alternative procedures have
(continued...)

His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. *Anders*, 386 U.S. at 744. In Gadson's case, the state court could reasonably conclude appellate counsel's brief amply satisfied the minimum requirements of *Anders.* Moreover, Gadson in his state habeas petition did not set forth a basis for concluding appellate counsel was constitutionally obliged to raise each issue identified in the notice of judicial acts in order to be reasonably effective. The process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. *Smith,* 477 U.S. at 536 (citing *Jones*, 463 U.S. at 751-52); *see also, Jones*, 463 U.S. at 751 ("Neither *Anders* nor any other decision of this Court suggests, however, that the indigent defendant has a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points.")

Ground one fails scrutiny under the prejudice prong of *Strickland* without reaching the performance prong. Gadson was afforded an opportunity to file a pro se brief on any issue he found of merit, including any matter identified in the notice of judicial acts filed by

---

³(...continued)
been judged inadequate: (1) if the procedure does not require either counsel or the appellate court to determine the appeal is frivolous, but merely that the defendant is unlikely to prevail on appeal; (2) if the procedure permits an appellate court to allow counsel to withdraw and thereafter decide the appeal without appointing new counsel; (3) if the procedure permits counsel to file a no-merit letter stating only the "bare conclusion" that the appeal has no merit; and (4) if the procedure only provides for one tier of review. *Id.* 120 S.Ct. at 761-62.

his trial counsel, and Gadson chose not to do so. Moreover, Gadson in his state habeas petition did not set forth a basis to conclude that had his appellate counsel elaborated on any issue in the judicial acts, it was reasonably probable he would have prevailed on appeal. Gadson fails to show the state habeas denial resulted other than a reasonable application of federal law as clearly established by the Supreme Court and a reasonable determination of the facts in light of the evidence.

### Grounds Two through Six

In grounds two through six, Gadson contends his trial counsel rendered ineffective assistance. In ground two, he faults his counsel for not objecting to the remarks of the prosecutor during closing argument. In denying claim one of his rule 3.850 motion summarily, the postconviction court held, in relevant part:

> In ground 1 [ground two of the federal petition], Defendant alleges counsel was ineffective for failing to object to prosecutorial misconduct and preserve the issue for appeal. Specifically, Defendant alleges that during opening statements, the State said "Give me your purse or I will shoot you and your boy. What are you looking at bitch? I will kill you if you don't do as I say." Defendant claims this comment denied him a fair trial by "actually appealing to the sympathy of the jury" and "inject[ing] elements of emotions and fear into the jury's mind."
>
> However, a review of the record reflects that the victim, Amee Petitt, testified that the man who robbed her stated "Give me your purse or I'll kill you and the boy" and "Give me your purse, bitch, or I'll. . . fucking kill you." (See July 22, 2003 transcript, pp. 144, 147, attached). Consequently, the Court finds that the State's comment was not improper because the State was merely reciting the facts she expected to prove during trial and which, in fact, were brought out at trial. (See July 22, 2003 Transcript, pp. 131, 144, 147, attached). See *Occhicone v. State*, 570 So. 2d 902, 904 (Fla. 1990) ("Opening remarks are not evidence, and the purpose of opening argument is to outline what an attorney expects to be established by the evidence."). The Court further finds that the statements were not unfairly prejudicial. Accordingly, Defendant has failed to show how counsel performed deficiently. As such, no relief is warranted on ground 1 of Defendant's Motion.

(Resp. Ex. 13).

In Florida, counsel is permitted wide latitude in arguing to a jury. In Gadson's case, the affirmance of the postconviction court's ruling settles state law matters, namely that the prosecutor's remarks fell within the ambit of proper comment on the properly admitted evidence and such did not constitute an improper appeal to jury sympathy under Florida law.

Gadson in his rule 3.850 motion also alleged the prosecutor's remarks violated due process. With respect to an underlying constitutional analysis, a petitioner must show the comments so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 178, 181 (1986) (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). In making this assessment, the reviewing court must consider the allegedly improper comments in the context of both the prosecutor's entire closing argument and the trial as a whole. *Branch v. Estelle*, 631 F. 2d 1229, 1233 (5th Cir. 1980). Among the considerations is the strength of the evidence. *Cobb v. Wainwright*, 609 F. 2d 754, 756 (5th Cir. 1980).

Gadson's rule 3.850 allegations did not overcome the strong presumption counsel's decisions during the prosecutor's closing remarks were in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 689-690. He did not show not one reasonably competent attorney could conclude the comments did not so infect the trial with unfairness as to make a resulting conviction a denial of due process.

Under the prejudice prong, the defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would

have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* at 694. Gadson's claim can be disposed of on the prejudice prong without reaching the performance prong. Given that the state courts did not grant relief on his rule 3.850 attack based on his underlying state law arguments, Gadson cannot show there was any reasonably probability of a different outcome had his trial counsel objected on the proposed state law grounds to the prosecutor's arguments.

Further, he cannot show actual prejudice from counsel's foregoing a claim of constitutional error regarding the prosecutor's closing remarks. It can be reasonably determined from the state record the prosecutor's comments challenged by Gadson's collaterally, in context and entirety, were permissible comments on the evidence.

Alternatively, any claimed error in the prosecutor's arguments was harmless beyond a reasonable doubt, whether under state law or a constitutional analysis. The instructions given his jury sufficiently conveyed that the attorneys' arguments were not evidence. Moreover, the state adduced ample evidence of Gadson's guilt of the armed robbery beyond a reasonable doubt, and in light of the compelling evidence of his guilt, including, among other things, the victim's unequivocal identification testimony, any claimed error in the prosecutor's remarks had no substantial and injurious effect or influence in determining the jury's verdict. *Brecht v. Abrahamson*, 507 U.S. 619 (1993). Accordingly, it is objectively reasonable to conclude there was no reasonable probability of a different result had counsel objected to the prosecutor's comments. *See e.g., Chandler v. Moore*, 240 F.3d

907, 914 (11th Cir. 2001) (concluding prosecutorial comments did not rise fundamental error, and Chandler's counsel could not be deemed ineffective for failing to object to such).

In ground three, Gadson faults his trial counsel for not confronting the victim with alleged inconsistent statements. In summarily denying his second rule 3.850 claim, the postconviction court found, in relevant part:

> In ground 2 [ground three of the federal petition], Defendant alleges counsel was ineffective for failing to impeach the victim with her inconsistent statements. Specifically, Defendant claims that the victim, Amee Petitt, testified at trial that she provided officers with a description of the robber, including his gold teeth. (See, July 22, 2003 transcript, p. 148, attached). Defendant further claims that during Officer Skypack's deposition, he testified that Ms. Petitt did not tell him about the gold teeth. Therefore, Defendant alleges, counsel should have introduced Officer Skypack's deposition to impeach Ms. Petitt.
>
> However, there is no rule of evidence which would have permitted counsel to impeach Ms. Petitt by introducing Officer Skypack's deposition; counsel would only be permitted to ask Ms. Pettit[t] about her initial description or impeach Officer Skypack with his own deposition testimony.
>
> Additionally, a review of the record reflects Ms. Petitt testified that she stood face-to-face, 2-3 feet away from the man who robbed her in "broad daylight" and had a clear unobstructed view of the robber, who did not wear a mask or otherwise attempt to shield his identity. (See July 22, 2003 transcript, pp. 145, attached). Ms. Petitt further provided a description of the robber as well as the vehicle he was driving, and even had someone write down the license plate of that vehicle immediately following the robbery. (See July 22, 2003 transcript, pp. 148-51, attached). Within 3-4 hours of the robbery, she specifically identified Defendant from a photopack, and in court, Ms. Petitt identified Defendant as the man she identified in the photopack. (See July 22, 2003 transcript, pp. 154-58, 164, 224, attached). As to the photopack identification, Ms. Petitt testified,
>
>> I was certain that I had identified the correct individual. I felt like I had got a very good look at him in the parking lot. We were face-to-face and I had ample opportunity to look at him, so I felt like I was sure that [] was that individual."

> (See July 22, 2003 transcript, p. 158, attached). Additionally, the license plate number which someone wrote down at Ms. Petitt's direction, was registered to Marlene Gadson, Defendant's mother, and the vehicle was the same as described by Ms. Petitt. (See July 22, 2003 transcript, pp. 197-98, 203, 207-08, 279, attached). Moreover, numerous telephone calls were made on Ms. Petitt's stolen cell phone to a telephone number registered to Kashaisa Powell, Defendant's sister. (See July 22, 2003 transcript, pp. 188-91, 279-80, Jury Trial Data Sheet, attached). Consequently, the Court finds that there is not a reasonable probability the outcome of the proceedings would have been different had counsel impeached Ms. Petitt's testimony that she described the robber's gold teeth to Officer Skypack. Accordingly, Defendant has failed to meet the prejudice prong of *Strickland*. As such, no relief is warranted on ground 2 of Defendant's Motion.

(Resp. Ex. 13).

With respect to the underlying state law arguments advanced by Gadson, the silent affirmance of the postconviction court's ruling resolves that the proposed course of impeachment was not shown to be proper under state law. Moreover, Gadson did not show that not one reasonably competent attorney could have concluded any alleged absence of a statement does not mean the victim had actually given any inconsistent statement. The officer recalled at trial she had mentioned the teeth.

The deficiency prong need not be addressed because Gadson's rule 3.850 allegations did not meet the prejudice prong of *Strickland*. Even if the victim had been confronted about the officer's recollection she did not mention the perpetrator had gold teeth, he does not show that such would have undercut her highly reliable identification. The officer at trial recalled she had mentioned the gold teeth. (Resp. Ex 1, V 3 T 202) Moreover, Gadson does not show the victim's description did not comport with her trial testimony in any material regard.

- 12 -

In addition, as the postconviction court pointed out, other corroborating evidence was adduced which linked Gadson to the crime, including the license of the vehicle driven by Gadson was traced to Gadson's mother and also phone calls from the stolen cell phone were made to Gadson's sister. Based on the compelling evidence of his guilt, it is objectively reasonable to conclude Gadson fails to show there is any reasonable probability of a different outcome had his counsel engaged in the proposed line of impeachment.

In ground four, Gadson faults his counsel for not impeaching the officer's trial testimony that the victim did describe the gold teeth with his deposition testimony in which he indicated the victim had not mentioned the gold teeth. In denying his fourth rule 3.850 claim summarily, the postconviction court found, in relevant part:

> In ground 4, Defendant alleges counsel was ineffective for failing to impeach Officer Skypack with his inconsistent testimony. Defendant claims Officer Skypack testified at trial that the victim described Defendant's gold teeth, but during deposition, he testified that the victim did not tell him about the gold teeth. Defendant further alleges that if counsel would have impeached Officer Skypack, the outcome of the trial would have been different.
>
> However, as the Court discussed in ground 2 above, after reviewing the trial record, the Court finds there is not a reasonable probability that impeaching Officer Skypack with his deposition testimony would have resulted in a different outcome. Accordingly, Defendant has failed to show that he was prejudiced by counsel's allegedly deficient performance. As such, no relief is warranted on ground 4 of Defendant's Motion.

(Resp. Ex. 13).

Gadson's rule 3.850 allegations did not suffice to overcome the strong presumption counsel's decisions during the matters for cross-examination were within the wide range of reasonable professional assistance. After all, at least one reasonably competent attorney

could conclude the proposed line of inquiry might reinforce the officer's recall of the victim's mention of the gold teeth.

As with ground three, the state court could reasonably dispose of this ground under *Strickland*'s prejudice prong. In view of the reliability of the victim's identification, and corroborating evidence, Gadson does not demonstrate that had his counsel confronted the officer with his deposition as proposed, there was any reasonable probability of a different outcome. The state decision resulted in a reasonable application of Strickland under either prong and a reasonable determination of the facts in light of the evidence.

In ground five, Gadson faults his trial counsel for not deposing various state witnesses, including an investigator with Verizon, an assistant at the motor vehicle department, and a custodian for Sprint. In denying his fifth claim of Gadson's rule 3.850 motion summarily, the postconviction court found, in relevant part, as follows:

> In ground 5, Defendant alleges counsel was ineffective in failing to interview and depose 3 of the State's witnesses. Specifically, Defendant claims that it was counsel's duty to interview and depose George Kennedy, Sabreta Dubra and Marilyn Coulter, and "had trial counsel interviewed these witnesses before trial, he would have been able to question them."[FN]1 Defendant further alleges if counsel had interviewed Mr. Kennedy and Ms. Cutter, "he would have brought out whose number was called on the victim's cell phone."
>
>> [FN1] In his Motion, Defendant refers to Sabreta Dubra as Sabreta Davis and Marilyn Coulter as Marilyn Cutter.
>
> When a defendant alleges ineffective assistance of counsel for failure to depose witnesses, he "must specifically set forth the harm from the alleged omission, identifying 'a specific evidentiary matter to which the failure to depose witnesses would relate.'" *Davis v. State*, 915 So. 2d 95, 123 (Fla. 2005) (quoting *Brown v. State*, 846 So. 2d 1114, 1124 (Fla. 2003)) (citation omitted). However, in the instant Motion, Defendant fails to allege those witnesses had any information unknown to him before trial, what evidence would have been elicited from these witnesses or what information might have

> been discovered had trial counsel deposed them. The mere allegation that counsel failed to depose witnesses is insufficient. *See Magill v. State*, 457 So. 2d 1367, 1370 (Fla. 1984). Although Defendant alleges counsel would have been able to show "whose number was called on the victim's cell phone," as the Court discussed in ground 2 above, the evidence provided by those witnesses reflected that numerous calls were made to a telephone number registered to Defendant's own sister. Consequently, the Court finds Defendant has failed to show how counsel performed deficiently or how counsel's alleged deficient performance prejudiced the outcome of the proceedings. As such, no relief is warranted on ground 5 of Defendant's Motion.

(Resp. Ex. 13).

Gadson fails to show counsel was constitutionally required to depose the witnesses in order to be reasonably effective. At least one reasonably competent attorney could conclude such course could potentially unveil for the prosecution any perceived weakness, from a defense perspective, in the state's case. The deficiency prong need not be addressed. Gadson forms his ground on speculation, failing to set forth a sufficient basis for concluding that had counsel deposed the three witnesses, there was any reasonable probability of a different outcome. The decision resulted in a reasonable application of *Strickland* under either prong and a reasonable determination of the facts in light of the evidence.

In ground six, Gadson faults his trial counsel for not investigating the cell phone call on the victim's cell phone. In denying claim three of Gadson's rule 3.850 motion summarily, the postconviction court held, in relevant part, as follows:

> In ground 3 [ground six of the federal petition], Defendant alleges counsel was ineffective for failing to investigate a 28-minute phone call made on the victim's cellular phone to phone number (813) 915-0306. Defendant claims "trial counsel should have investigated this in which it would have been brought out in trial whose number this was registered to . . . and had trial counsel done so, he would have shown the jury that the Defendant did not make the call. . ."

- 15 -

> However, a review of the record reflects that phone number was registered to Defendant's sister, Kashaisa Powell. (See Evidence Data Sheet, July 22, 2003 transcript, pp. 188-91, 293, attached). The Court notes that Defendant is not alleging his sister would have testified that he did not make the phone call, but only that counsel should have investigated to whom the number was registered. Consequently, Defendant fails to show how counsel's alleged deficient performance prejudiced the outcome of the proceedings. As such, no relief is warranted on ground 3 of Defendant's Motion.

(Resp. Ex. 13).

Gadson does not overcome the strong presumption trial counsel's performance relative to the phone records fell within the wide range of professional competent assistance. Gadson did not show that counsel had overlooked any information which would have called into serious question testimony which established a phone call was made from the victim's phone number to Gadson's sister.

Gadson fails to meet the prejudice prong. He does not show that had counsel investigated further, there was any reasonable probability of a different outcome. The state decision resulted in a reasonable application of *Strickland* and a reasonable determination of the facts in light of the evidence.

Finally, Gadson is now barred by 28 U.S.C. § 2254(e)(2) from seeking an evidentiary hearing in this proceeding on any factual allegation not timely presented the Florida courts. Failure to develop any such factual assertion not alleged in state court in support of his grounds is solely attributable to lack of diligence on the part of Gadson.

Even if § 2254(e)(2) does not preclude a federal evidentiary hearing, Gadson is not automatically entitled to a hearing. In order to obtain an evidentiary hearing, the petitioner must demonstrate he would be entitled to habeas relief on his claim if his factual allegations are proven. *See Breedlove v. Moore*, 279 F.3d 952, 960 (11th Cir. 2002). This

determination is circumscribed by the AEDPA's highly deferential standards. *Id.*, 279 F.3d at 960 ("In the post AEDPA era, we do not conduct an independent review of claims that have been addressed on the merits by the state courts. The relevant standard for federal habeas review of such claims is governed by 28 U.S.C. § 2254(d)(1)....") Gadson is not entitled to federal relief on his grounds. His factual underpinnings for his claims, even if, proven, would not establish that the state courts acted contrary to, or unreasonably applied, clearly established federal law as determined by the Supreme Court at the time.

Accordingly, the Court orders:

That Gadson's petition is denied. The Clerk is directed to enter judgment against Gadson and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v.*

*Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on June 3, 2009.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Dominick Gadson

- 18 -